IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-00150-01-CR-W-DGK |
| | ) | |
| MICHAEL RYAN NEVATT, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Michael Ryan Nevatt's Motion to Suppress Evidence and Statements. For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On March 30, 2016, a Criminal Complaint was filed against defendant Michael Ryan Nevatt. On April 21, 2016, the Grand Jury returned a one-count Indictment against defendants Nevatt, Kenneth Bryant Lake, Kara Rene Baze, Scott Bryan Sands, Jerry Lee Brown and Travis Lee Bethel. On November 17, 2016, the Grand Jury returned a seven-count Superseding Indictment against defendants Michael Nevatt, Lake, Baze, Sands, Brown, Bethel, Lanny Eugene Ham, Cindy Ann Nevatt, Autumn Sky Provience, Jarub Ray Baird, Breann Nicole Hall, Jake Ian Nixon, Aaron Randall Stull, Michelle Vanne Gray and Tara L. Harken.[1] In Count One of the Superseding Indictment, defendant Michael Nevatt is charged with conspiracy to distribute 500

---

[1] Defendants Lake, Baze, Sands, Brown, Bethel, Ham, Cindy Nevatt, Provience, Baird, Hall, Nixon, Stull, Gray, and Harken have entered guilty pleas.

grams and more of methamphetamine. In Count Two, defendant Michael Nevatt is charged with conspiracy to carry, use and possess various firearms in furtherance of the conspiracy to distribute methamphetamine charged in Count One. In Count Three, defendant Michael Nevatt is charged with possession of firearms in furtherance of a drug trafficking crime. In Count Four, defendant Michael Nevatt is charged with conspiracy to commit money laundering. Counts Five and Six charge defendant Michael Nevatt with engaging in monetary transactions in property derived from specified unlawful activity. Count Seven charges defendant Michael Nevatt with laundering of monetary instruments.

On February 7, 2018, an evidentiary hearing was held on defendant's motion to suppress. Defendant Nevatt was represented by retained counsel John P. O'Connor. The Government was represented by Assistant United States Attorney Bruce A. Rhoades. The Government called Detective Jason Copley and Officer Jim Cooney of the Springfield, Missouri Police Department as witnesses. The defense called no witnesses to testify.

## II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

    1. In July 2015, Detective Jason Copley was assigned to the Narcotics Enforcement Team of the Springfield Police Department. (Tr. at 4) The Narcotics Enforcement Team cultivates long-term narcotics cases hoping that they will develop into conspiracy cases which the team can then work on with the DEA or other federal agencies. (Tr. at 4) In mid-July, 2015, Detective Copley received information through his chain of command that Michael Nevatt was trafficking large amounts of methamphetamine from Texas and Oklahoma to Branson and Springfield, Missouri. (Tr. at 5) Detective Copley conducted criminal history checks and basic research regarding the targets set forth in the information provided. (Tr. at 6) Detective Copley obtained a Department of Revenue photo and criminal history for Michael Nevatt. (Tr. at 6) The criminal history stated that Nevatt had past felony offenses including violent offenses. (Tr. at 6)

2. In the late morning or early afternoon of July 29, 2015, Detective Copley was contacted by Task Force Officer J.D. Roberts. (Tr. at 6) Officer Roberts informed Detective Copley that he had run Michael Nevatt's name in a deconfliction system and received a conflict with Copley, so Roberts was calling to let Copley know that Nevatt was a suspect in a conspiracy that was being worked out of Kansas City. (Tr. at 6)

3. Also on July 29, 2015, Detective Copley received information that Michael Nevatt was operating a motorcycle and that he was at Mercy Hospital in Springfield, Missouri. (Tr. at 7) That information came from Breann Hall's[2] father. (Tr. at 47) In the mid-afternoon, Detective Copley and Detective Miller responded to Mercy Hospital in an unmarked vehicle, located Nevatt's motorcycle (by running the plates through dispatch), and conducted surveillance. (Tr. at 7-8) The detectives waited half an hour to an hour before Michael Nevatt came out of the hospital and approached the motorcycle. (Tr. at 7) Nevatt was wearing a drawstring type backpack. (Tr. at 9) Nevatt got into the side saddle of the motorcycle, pulled a helmet out, placed the helmet on his head, and left the parking lot on the motorcycle. (Tr. at 9)

4. Detective Copley and Detective Miller followed Michael Nevatt. (Tr. at 10) Detective Copley testified that Nevatt appeared very uncomfortable operating the motorcycle, that is a very rigid form, slow acceleration to the point of impeding traffic, and almost unable to keep balance on the motorcycle. (Tr. at 10) Detective Copley testified that the traffic violations he observed Nevatt commit were impeding and obstructing traffic and being unable to maintain a lane. (Tr. at 24) Detective Copley testified that he had previously worked in a patrol capacity with the Springfield Police Department and had experience and training relating to impaired driving. (Tr. at 10) Based on the way in which Nevatt was operating the motorcycle, Detective Copley thought that Nevatt was possibly impaired. (Tr. at 11) Detective Miller contacted Officer Jim Cooney in an attempt to get him to conduct a traffic stop on Nevatt. (Tr. at 11) The detectives had used Officer Cooney in the past to conduct traffic stops on drug targets. (Tr. at 11) Detective Miller told Officer Cooney that he wanted the motorcycle stopped based on the officers' suspicion that the operator was intoxicated or impaired. (Tr. at 12, 51-52) Detective Copley and Detective Miller continued to follow Nevatt until Officer Cooney arrived. (Tr. at 12) Nevatt was stopped approximately two miles from the hospital. (Tr. at 12) After Nevatt was stopped, Detective Copley requested Detective Eric Hawkins, a K-9 officer, to respond to do a sniff of the motorcycle. (Tr. at 15-16, 25) Detective Copley testified that other than the information Copley had that Nevatt was involved in some kind of drug trafficking conspiracy, he had no reason to believe that Nevatt was carrying something of evidentiary value on the motorcycle. (Tr. at 47-48)

5. Officer Cooney was driving an unmarked patrol vehicle that was equipped with a dash strobe light. (Tr. at 13) The vehicle was not equipped with a video camera. (Tr. at 13) Officer Cooney was not wearing a body camera or a body microphone. (Tr. at

---

[2] Breann Hall (also a defendant in this case) had a child with Michael Nevatt. (Tr. at 47) Breann Hall was in the hospital that day. (Tr. at 47)

13-14) The vehicle Detective Copley was driving did not have audio or video recording equipment. (Tr. at 14)

      6.     Officer Cooney had Michael Nevatt get off the motorcycle and told him that he was going to give him a pat-down for weapons, to which Nevatt consented. (Tr. at 55) Officer Cooney asked Nevatt for consent to search the motorcycle for any weapons or anything else, but Nevatt declined to consent. (Tr. at 41, 55) Officer Cooney told Michael Nevatt that he stopped him because another officer had observed some indicators of impairment while Nevatt was driving his motorcycle. (Tr. at 55) Officer Cooney testified that Nevatt stated that he had just gotten the motorcycle a few days before, that he had never ridden a motorcycle, and that was why he was probably driving like that. (Tr. at 55) Officer Cooney determined that Nevatt was not impaired from drugs or alcohol based on Cooney's interaction with Nevatt and after administering Nevatt a field sobriety test. (Tr. at 24-25, 48, 59-60) Officer Cooney ran Nevatt through the computer and determined that he had no warrants. (Tr. at 26) While Nevatt had a valid driver's license, he did not have a proper endorsement for driving a motorcycle and he did not have any insurance for the motorcycle. (Tr. at 26, 56-57) Officer Cooney wrote Nevatt a municipal citation for not having a motorcycle endorsement. (Tr. at 26, 57) Officer Cooney gave Nevatt a verbal warning for not having insurance. (Tr. at 58)

      7.     An inventory search of the motorcycle was performed because Officer Cooney was going to have the motorcycle towed. (Tr. at 38-39) Officer Cooney testified that he decided to tow the motorcycle for the following reasons:

> Based on no insurance, that he didn't have it, the bike still being in the street, him having access to it, he wasn't going to have any warrants or anything else to take him to jail for to separate himself from the motorcycle, I was going to tow the motorcycle.

(Tr. at 57) Officer Cooney testified that it would have created a safety hazard if he had just left the motorcycle in the street where Michael Nevatt, who admittedly could not safely operate the motorcycle and who had no insurance, could just come back to it. (Tr. at 63-64) Officer Cooney testified that he did not consult with Detective Miller or Detective Copley about his decision to tow the motorcycle. (Tr. at 57) When asked why he did not consult with the detectives, Officer Cooney testified, "Because at that point it was my traffic stop and, you know, that was – they had their side of it and then I had my obligations and the side of my stop." (Tr. at 57)

      8.     The Springfield Police Department Standard Operating Guideline in effect at the time provides, in relevant part, the following policy regarding the towing of vehicles:

> Custody Tow – A vehicle towed for the following reasons:
>
> * * *

4

- Ordered removed by the Police Department … because of a violation of law … ,

\* \* \*

When Custody Towing a vehicle, personnel shall complete Missouri Department of Revenue Crime Inquiry and Inspection Report / Authorization of Tow … (Tow Report) which shall serve as the written record of all vehicles towed at the direction of police personnel. …

> 2.1.1(a) The inventory section of the Tow Report shall be completed as follows:
>> 2.1.1(a.1) The inventory section must be completed in all cases.
>> \* \* \*
>> 2.1.1(a.3) All property with an estimated value of $25 or more shall be documented.
>> \* \* \*
>> 2.1.1(a.5) Any situation that prevents an inventory from being completed shall be documented in the inventory section.[3]

(Defendant's Ex. 1 at 1 and 3)

9. Officer Cooney began the inventory of the motorcycle and filling out the Tow Sheet per standard procedure. (Tr. at 58-59) In the motorcycle saddlebag, Officer Cooney found a couple of cell phones and a drawstring style workout bag that contained a GoPro camera, a tablet, and a plastic bag that had a large amount of money in it. (Tr. at 59) Michael Nevatt denied knowing the money was there. (Tr. at 61-62) Officer Cooney then asked Nevatt a question like how do you not know this large amount of many bundles of 20s and 100s is in this motorcycle that you're driving around? (Tr. at 62) Nevatt told Officer Cooney that he wanted his lawyer. (Tr. at 62) Officer Cooney testified that he did not ask Nevatt any more questions. (Tr. at 62) Officer Cooney testified that the questions about the money were related to towing and inventory in that Cooney was basically establishing ownership of items. (Tr. at 62)

10. Detective Copley and Detective Miller stayed in their vehicle and staged south of the area while the traffic stop was being conducted. (Tr. at 15) Detective Copley testified that he did not see Officer Cooney actually stop Michael Nevatt. (Tr. at 15) Detective Copley testified that he also did not see Detective Hawkins arrive on the scene. (Tr. at 16) Detective Hawkins informed Detective Copley that the dog did not

---

[3] Officer Cooney testified that in his experience, this section references the type of situation where a sexual assault has taken place inside a vehicle and the officers on scene are instructed not to inventory that vehicle, even though it is towed, because that vehicle is going to be taken as part of the actual crime and the crime lab will conduct forensic work on the vehicle. (Tr. at 75-76)

5

indicate on any drug odors around the motorcycle during the sniff. (Tr. at 16) Officer Cooney called Detective Miller to inform him that after Cooney determined that Nevatt did not have a license with a motorcycle endorsement and that Nevatt had no motorcycle insurance, Cooney conducted an inventory search at which time he located a large sum of U.S. currency, electronic devices and a GoPro camera. (Tr. at 16-17, 59) Detective Copley then contacted Task Force Officer Roberts to give him the information regarding the items found during the inventory search due to their prior conversation about the conspiracy case in which Nevatt was involved. (Tr. at 17) Officer Roberts asked Detective Copley to collect the U.S. currency. (Tr. at 17) Detective Copley drove to the site, dropped Detective Miller off to collect the items from Officer Cooney, and maintained a position away from the traffic stop. (Tr. at 17) Detective Copley was working in an undercover capacity at that time and tried to avoid any face-to-face contact with any targets with whom he might have future contact. (Tr. at 17) Detective Miller advised Nevatt that he was going to take the money and the electronic items as part of an ongoing investigation. (Tr. at 60)

11. Officer Cooney did not fill in the inventory section of the Tow Report. (Tr. at 34) According to Detective Copley, "Those items were initially located during an inventory and later logged as evidence. They weren't going to be left with the motorcycle, therefore, they weren't logged as an inventory." (Tr. at 40) Officer Cooney explained that the inventory sheet only contains items that are left with the vehicle to cover the police and the tow company while the vehicle is stored. (Tr. at 61) Officer Cooney testified that items that are seized as evidence are included in a police report under the property tab section, rather than an inventory. (Tr. at 67, 71) For instance, Officer Cooney testified that if he locates drugs in a vehicle as part of an inventory, he does not note the drugs in the inventory section of the tow sheet. (Tr. at 76) Officer Cooney testified that the items seized by Detective Miller were documented in the police report. (Tr. at 71) The tow sheet is also part of the police report. (Tr. at 71)

12. After Michael Nevatt had been given his ticket, the tow service arrived. (Tr. at 61) As they were loading the motorcycle up, Nevatt asked Officer Cooney if he could take the money with him. (Tr. at 61) Officer Cooney said no, that Nevatt should just leave. (Tr. at 61) Nevatt said, "It's $75,000." (Tr. at 61) Officer Cooney told Nevatt that he needed to leave and Nevatt left. (Tr. at 61)

13. Detective Copley testified that he used information obtained from the traffic stop in an affidavit to obtain search warrants for the devices located during the traffic stop (a GoPro, a tablet, and two cell phones) as well as a search warrant for a hotel room which search was conducted approximately one month after the traffic stop. (Tr. at 18) Officers seized a large sum of U.S. currency, controlled substances, cell phones, and tablets from the hotel room. (Tr. at 19)

III.  DISCUSSION

Defendant Nevatt seeks to suppress "(a) all evidence collected and obtained as a result of the search conducted of Mr. Nevatt's motorcycle on the evening of July 29, 2015, either directly or derivatively; and (b) all evidence, descriptions, and testimony resulting from the search of the Quality Inn hotel room on the night of August 28, 2015." (Motion to Suppress Evidence and Statements[4] (doc #351) at 1)  According to defendant, police officers conducted a pretextal stop so that the officers could conduct an illegal investigatory search of his motorcycle.  (Id. at 2) Further, officers used the fruits of this illegal search to obtain a search warrant for the Quality Inn hotel room.[5]  (Id.)

A.  The Stop

The stop of defendant Nevatt was lawful.  As the Eighth Circuit Court of Appeals has observed, "any traffic violation, however minor, gives an officer probable cause to stop a vehicle." United States v. Arciniega, 569 F.3d 394, 397 (8th Cir. 2009).  Accord United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003).  Prior to stopping defendant Nevatt, Officer Cooney had been advised by Detective Miller that he wanted the motorcycle stopped based on the officers' suspicion that the operator was intoxicated or impaired.  (Fact No. 4)  Detective Copley testified that the traffic violations he observed Nevatt commit were impeding and obstructing traffic and being unable to maintain a lane.  (Id.)  In United States v. Frasher, 632 F.3d 450, 453 (8th Cir.),

---

[4] Although the title of the motion includes the suppression of statements, neither the motion nor the suggestions in support of the motion discuss the suppression of any statement made by defendant Nevatt.

[5] While the Suggestions in Support of Defendant's Motion to Suppress Evidence and Statements state that the application for this search warrant is attached to the suggestions as Exhibit A (see doc #352 at 4), there was no exhibit attached to the suggestions.  Further, no exhibit relating to a search warrant for the Quality Inn hotel room was offered at the suppression hearing.

7

cert. denied, 565 U.S. 893 (2011), the court found "[w]hen multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." The stop of defendant Nevatt's vehicle was proper.

The fact that the officers might also have wanted to stop the vehicle for reasons other than the traffic violation does not invalidate the traffic stop. In United States v. Sallis, 507 F.3d 646 (8th Cir. 2007), the Eighth Circuit Court of Appeals found:

> "An officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation. 'This is true even if a valid traffic stop is a pretext for other investigation.'" United States v. Coney, 456 F.3d 850, 855-56 (8th Cir. 2006)(internal citation omitted)(quoting United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002)) …

Id. at 649. See also Whren v. United States, 517 U.S. 806 (1996)(temporary detention of motorist upon probable cause to believe that he has violated traffic laws does not violate Fourth Amendment's prohibition against unreasonable seizures, even if reasonable officer would not have stopped motorist absent some additional law enforcement objective); United States v. Frasher, 632 F.3d 450, 454 (8th Cir. 2011)("[officer's] observation of the traffic violation gave him probable cause to stop the vehicle, and his subjective intent to learn the driver's identity is irrelevant"); United States v. Arciniega, 569 F.3d 394, 397 (8th Cir. 2009)("irrelevant that the officer may have ignored the violation were it not for a suspicion that greater crimes are afoot"); United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007)("the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop"); United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001)("Courts are not to consider the motive for a stop as long as the reason for the stop is valid.")

B    Warrantless Search of the Motorcycle

As set forth by the United States Supreme Court in South Dakota v. Opperman, 428 U.S. 364 (1976):

> In the interests of public safety and as part of what the Court has called "community caretaking functions," … automobiles are frequently taken into police custody. … The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

Id. at 368-69 (citation omitted). Accord United States v. Harris, 795 F.3d 820, 822 (8th Cir. 2015). See also State v. Kelley, 678 S.W.2d 852, 854 (Mo. Ct. App. 1984)("impoundment of a vehicle, and a subsequent inventory, without a warrant, is justified … if the location or condition of the vehicle is such that the safety or interest of the public requires its removal and police intervention is the only viable option.")

The Springfield Police Department Standard Operating Guideline for a Custody Tow provides that a vehicle may be towed when "[o]rdered removed by the Police Department … because of a violation of law." (Fact No. 8) Officer Cooney determined that defendant Nevatt had violated the law by not having a motorcycle endorsement and not having any insurance for the motorcycle. (Fact No. 6) Officer Cooney testified that it would have created a safety hazard if he had just left the motorcycle in the street where defendant Nevatt, who admittedly could not safely operate the motorcycle and who had no insurance, could just come back to it. (Fact No. 7) Thus, Officer Cooney decided to have the motorcycle towed. (Id.) The tow policy provides that an inventory of the contents of a vehicle must be completed when a vehicle is towed. (Fact No. 8)

"The inventory search exception to the Fourth Amendment's warrant requirement permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even

9

without a warrant or probable cause to search." United States v. Garreau, 658 F.3d 854, 857 (8th Cir. 2011). An inventory search of a vehicle is valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation. See Colorado v. Bertine, 479 U.S. 367, 372 (1987). In United States v. Arrocha, 713 F.3d 1159 (8th Cir. 2013), the Eighth Circuit Court of Appeals provided the following guidance, which appears pertinent in this case:

> Arrocha asserts on appeal that the police were merely rummaging … in order to discover incriminating evidence. … Although the disturbance calls gave the officers reason to suspect there might be a gun in Arrocha's car, when there is a valid reason to impound a vehicle, "[t]he presence of an investigative motive does not invalidate an otherwise valid inventory search." United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999), cert. denied, 528 U.S. 1119 (2000).

Arrocha, 713 F.3d at 1163-64. See also United States v. Harris, 795 F.3d 820, 822 (8th Cir. 2015) ("when police are conducting 'inventory searches according to such standardized policies, they may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime'")(quoting United States v. Marshall, 986 F.2d 1171, 1176 (8th Cir. 1993)).

The Court finds that Officer Cooney's decision to tow defendant Nevatt's motorcycle was made on the basis of safety. The Court further finds that the inventory search of the motorcycle was conducted pursuant to standardized police procedures and that it was not done in bad faith or for the sole purpose of investigation. As set forth above, as long as Officer Cooney's sole purpose in conducting the inventory search was not to investigate a crime, he may keep his eyes open for potentially incriminating items that he might discover in the course of the inventory search. Officer Cooney's discovery of a plastic bag containing a large amount of money of which defendant Nevatt denied any knowledge certainly appears potentially incriminating and warranted

Officer Cooney's call to Detective Miller.  See United States v. Hall, 497 F.3d 846, 849 (8th Cir. 2007)(after officer found methamphetamine-related items during inventory search of vehicle that he originally had been directed to stand watch over because the vehicle may contain items associated with the manufacture of methamphetamine, officer requested backup from detectives). The Court credits Officer Cooney's explanation as to why he did not list the items he discovered during the inventory search on the tow report as they were seized as evidence by Detective Miller and documented elsewhere in the police report.  (Fact No. 11)   In United States v. Garreau, 658 F.3d 854 (8th Cir. 2011), the court found an officer's failure to list contraband property found during an inventory search on an inventory log permissible.  The court stated:

> [The officer] testified that he never lists contraband on inventory logs, and "established routine" is one permissible basis to regulate an inventory search.  See Florida v. Wells, 495 U.S. 1, 4 (1990).  The relevant stated purposes of an inventory search under the policy are to protect the property of the vehicle's owner and to protect the highway patrol from claims of lost, damaged, or stolen property. Neither purpose seems to be furthered by listing contraband on an inventory log rather than an evidence log, although it is true that the policy does not by its terms distinguish between contraband and other property.

Id. at 857-58.   The inventory search of defendant Nevatt's motorcycle was lawful.

### C. The Hotel Room

The only argument presented by defendant Nevatt with respect to the suppression of evidence seized from the Quality Inn hotel room is that officers used the fruits of the illegal search of the motorcycle to obtain a search warrant for the hotel room.  Given the Court's findings that the stop of defendant Nevatt and the search of his motorcycle were proper, there is no basis for the suppression of the evidence seized from the hotel room.

## IV. CONCLUSION

Given the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Nevatt's Motion to Suppress Evidence and Statements (doc #351).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

/s/ *Sarah W. Hays*
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE